UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARCUS CREVELLE,

                       Plaintiff,

        -against-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, P.O. RONALD
SANCHEZ (Shield No.: 22769), P.O. JUSTIN
SMITH (Shield No.: 6812) and SGT. VINCENT
D'AMBROSIO (Shield No.: 1329),

                       Defendants.

---

**AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

**Docket No.: 14-CV-6569**

---

Plaintiff, MARCUS CREVELLE, by his attorney, ROBERT J. DIGIANNI JR., as and for his complaining of the defendants, hereby alleges the following:

## PRELIMINARY STATEMENT

1.     This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983, and pendant claims under the laws of New York.

2.     Plaintiff MARCUS CREVELLE's ("Mr. Crevelle") right to be free from unreasonable seizures was violated when officials of the New York City Police Department ("NYPD") used gratuitous and unlawful force against him on July 22, 2013 during the course of his arrest causing Mr. Crevelle to endure, inter alia, fractured and loosened teeth requiring multiple dental procedures, including but not limited to tooth extraction and implant surgery. By reason of defendants' use of unreasonable force, Mr.

Crevelle was deprived of his constitutional rights secured by the Fourth and Fourteenth Amendments.

3.      Mr. Crevelle also seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION

4.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a) (3-4).  This action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

5.      Venue is proper for the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), (c) and § 1402(b) because the claims arose in this district and Mr. Crevelle resides in this district.

## JURY DEMAND

6.      Mr. Crevelle respectfully demands a trial by jury of all issues in this matter pursuant to Fed.R.Civ.P. 38(b).

## THE PARTIES

7.      Plaintiff, MARCUS CREVELLE ("Mr. Crevelle"), is and was at all relevant times hereto a citizen of the United States and a resident of the County of Kings and State of New York.

8.      Defendant, City of New York ("City"), is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and on information and belief, The City receives federal funding and is a "public entity" as defined by 42 U.S.C. § 12131..

9.     The City is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

10.     Defendant, New York City Police Department ("NYPD"), is a charter agency of the City authorized to perform law enforcement functions in and for the City. The City maintains the NYPD, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

11.     Defendant, Police Officer RONALD SANCHEZ (Shield No. 22769) ("P.O. Sanchez"), is and was at all times relevant hereto an employee of the City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

12.     Defendant, Police Officer JUSTIN SMITH (Shield No.: 6812) ("P.O. Smith"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

13.     Defendant, Sergeant VINCENT D'AMBROSIO (Shield No.: 6812) ("Sgt. D'Ambrosio"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

14.     Defendants, P.O. Sanchez, P.O. Smith, Sgt. D'Ambrosio et ano., refers to known and unknown named police officers who were at all relevant times hereto employees of defendant NYPD and were acting under the supervision of said department and according to their official duties.

15.     That at all times relevant herein, the defendant officers were each a supervisory employee of, and an agent, servant and/or employee of The City and NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties.  Each defendant officer is sued individually and in his supervisory capacity.

16.     The officer-defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. Crevelle's rights.

17.     That at all times relevant herein, the City operated, maintained, managed, supervised and controlled a police department as part of and in conjunction with its municipal functions.

18.     That at all times relevant herein, P.O. Sanchez, P.O. Smith, Sgt. D'Ambrosio et. ano. were employees of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendants under the theory of *respondeat superior*.

19.     That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised the defendant officers named herein.

20.     Upon information and belief, the defendant police officers were graduates of the Police Academy of The City of New York, where they received training and instruction set forth and sanctioned by The City and NYPD.  Further, while at The Police Academy and intermittently thereafter, Police Officers including the named defendants receive training and instruction formulated by The City and NYPD

21.     At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, the defendant officers, to conform their conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting themselves in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

22.     At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, the defendant officers, in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

23.     At all times hereinafter mentioned, the defendant officers were acting under color of law.

24.     At all times hereinafter mentioned, the defendant officers' acts constituted state action.

25.     That at all times hereinafter mentioned, the defendant officers were on duty and/or acting as employees, agents or servants of The City and NYPD and were also present at the same time and in the same place as plaintiff as aforesaid.

## STATEMENT OF FACTS

26.     That on or about July 22, 2013, at approximately 10:00 p.m. Mr. Crevelle was lawfully within the confines of the premises located at located at 2100 Beekman Place in the County of Kings and State of New York ("premises").

27.     That on or about July 22, 2013, there existed a heavy double exit door to the premises, which bore reinforced glass windows ("exit doors").

28.     That on or about July 22, 2013, the exit doors opened outward onto the public sidewalk.

29.     That on or about July 22, 2013, Mr. Crevelle was a licensee lawfully within the confines of the premises at and about the exit doors when he was stopped, detained and arrested by defendants' police officers P.O. Sanchez, P.O. Smith and Sgt. D'Ambrosio.

30.     That at all times herein, Mr. Crevelle willfully and fully submitted to the defendant police officers.

31.     That Mr. Crevelle faced the exit door and submitted to the defendant police officers.

32.     That while Mr. Crevelle faced the door he observed P.O. Sanchez outside holding said door closed.

33.     That while P.O. Sanchez held the door closed, he smiled at Mr. Crevelle.

34.     That while P.O. Sanchez held the door closed, P.O. Smith grabbed Mr. Crevelle by the back of his head and smashed Mr. Crevelle's face into the exit door's glass window.

35.     That P.O. Sanchez held the door closed so that P.O. Smith could slam Mr. Crevelle's face into the door.

36.     That P.O. Smith smashed Mr. Crevelle's face into the door window with such great force that it shattered the glass.

37.     As a result of defendants' actions, Mr. Crevelle suffered injuries including but not limited to multiple fractured and loosened teeth requiring surgical intervention including but not limited to extraction and implant surgery.

38.     That after smashing Mr. Crevelle's face into the glass, P.O. Smith, P.O. Sanchez and Sgt. D'Ambrosio continued to strike Mr. Crevelle and handle him very roughly, despite the fact that he was visibly and seriously injured.

39.     Throughout the incident described herein, the officer-defendants behaved sadistically and maliciously, and demonstrated deliberate indifference t o  Mr. Crevelle's rights and physical well-being.

40.     That on or about July 22, 2013, Mr. Crevelle was arrested and imprisoned at the 71st Precinct stationhouse for approximately six (6) hours.

41.     That from the time of the attack through his initial detention at the 71st Precinct stationhouse, defendants, their agents, servants and/or employees denied Mr. Crevelle access to medical attention despite the fact that he was visibly and seriously injured and complaining of pain.

42.     That on or about July 22, 2013, Mr. Crevelle was transferred to Central Booking for approximately one (1) hour at which time personnel at Central Booking sent him back to the 71st Precinct because he was in need of urgent medical attention for injuries caused by defendants' police officers P.O. Sanchez, P.O. Smith and Sgt. D'Ambrosio.

43.     That on or about July 22, 2013, Mr. Crevelle was then held for approximately five (5) more hours at the 71st Precinct before defendants' police officers provided access to emergency medical services for transport to Kings County Hospital for emergency medical attention.

44.     The level of force employed by all of the officer-defendants was objectively unreasonable and in violation of Mr. Crevelle's constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

45.     Defendants' actions were contrary to sound medical practice, contrary to the norms of a civilized society, and in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983, as said rights are secured by the laws and Constitution of the United States of America, and the statutes, regulations and ordinances of the City of New York.

46.     That during this time, Mr. Crevelle remained shackled at the wrists and ankles.

47.     That on or about July 22, 2013, defendants' police officers purposely threw Mr. Crevelle into the ambulance violently, causing him further injury.

48.     That on or about July 22, 2013, Mr. Crevelle was held in shackles at Kings County Hospital Emergency Room for approximately five (5) hours.

49.     That on or about July 22, 2013, Mr. Crevelle was then again held at the 71st Precinct and Central Booking for approximately twenty one (21) more hours.

50.     That at all relevant times herein, Mr. Crevelle was imprisoned for approximately thirty eight (38) hours under Arrest Number K13665935 and Docket Number 2013KN057205.

51.     That at all relevant times herein, Mr. Crevelle acted in accordance with all police officers' requests despite the frequent physical, verbal and emotional harassment and abuse by them.

52.     That at all times relevant herein, defendants' police officers used excessive force and physical force upon Mr. Crevelle causing him to sustain severe and permanent injuries, despite the fact that plaintiff did not pose a threat to the physical safety of either officer, or to the public at large, or to any third party.

53.     Furthermore, the defendants used excessive force against the plaintiff despite the plaintiff's submissive and non-threatening conduct, which was duly deferential and respectful of the defendants' apparent authority as law enforcement officers and/or state actors engaged in a law enforcement capacity.

54.     That at all times relevant herein, the defendant police officers used excessive, unnecessary and unwarranted force upon Mr. Crevelle, without his consent and without justification or legal basis.

55.     That at all times relevant herein, defendants, their agents, servants and/or employees acted maliciously and intentionally.

56.     That at all times herein, defendants, their agents, servants and/or employees, all of whom were acting in the performance of their employment, within the scope of their authority and in furtherance of policies and practices implemented by The City and NYPD.

57.     That at all times herein, said policy and practice violated the civil rights of the public, including Mr. Crevelle herein.

58.     That at all times herein, defendants, their agents, servants and/or employees who participated in the arrest of Mr. Crevelle were following a custom and practice of retribution and retaliation taken on behalf of P.O. Sanchez, P.O. Smith and Sgt. D'Ambrosio against Mr. Crevelle.

59.     That the aforesaid assault, battery and abuse of authority was not the first incident wherein the defendant police officers named herein committed acts of misconduct while on duty as members of NYPD.

60.     That NYPD and The City had actual and constructive notice of P.O. Sanchez and P.O. Smith's propensities for violence and misconduct but failed to do anything to mitigate the danger that their continued employment presented to the public at large, including the plaintiff herein.

61.     That at all times relevant herein, the NYPD and The City did fail to train and/or retrain and/or reinstruct P.O. Sanchez and P.O. Smith after acquiring notice of their defective and dangerous propensities.

62.     The NYPD and The City did negligently hire, retain and train the individually named police officer defendants to the detriment of the public and to the plaintiff herein.

63.     By reason of the foregoing acts of the defendants, and as a direct and proximate result of the acts of the defendants, Mr. Crevelle suffered severe and permanent personal injuries and damages, and upon information and belief, will continue to suffer pain in the future.

64.     By reason of the foregoing acts of the defendants, Mr. Crevelle was caused severe and intense emotional and psychological anguish, distress and embarrassment and will continue to suffer same in the future.

65.     By reason of the foregoing, Mr. Crevelle was compelled to and did necessarily, require medical attention and did necessarily pay and become liable therefore, and will necessarily continue to incur similar expenses in the future.

66.     By reason of the foregoing, Mr. Crevelle was compelled to, and did necessarily incur legal fees and did necessarily pay and become liable therefore, and will necessarily incur similar legal fees in the future.

67.     This complaint, arising from the deprivation of plaintiff's constitutional rights, and the physical, psychological and emotional injuries he suffered while in the custody and care of the defendants, seeks compensatory damages, punitive damages and attorney's fees.

## PROCEDURAL PREREQUISITES

68.     On or about October 17, 2013, Mr. Crevelle filed a Notice of Claim against the defendants pursuant to General Municipal Law §50e.

69.     The aforesaid Notice of Claim was duly served upon the defendants within ninety (90) days after the causes of action of plaintiff accrued.

70.     More than thirty (30) days have elapsed since the service of the Notice of Claim upon the defendants.

71.     That on January 14, 2014, Mr. Crevelle was present for an examination pursuant to GML § 50-h.

72.     The defendants and the comptroller have failed, neglected, and refused to pay, settle, compromise, or adjust the claim of the plaintiff herein.

73.     This action has been commenced within three (3) years after the cause of action of plaintiff accrued.

74.     Plaintiff has duly complied with all of the conditions precedent to the commencement of this action.

**FIRST CAUSE OF ACTION**
DEPRIVATION OF RIGHTS
UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
(Against Officer-Defendants)

75.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

76.     Officer-defendants, under color of state law, subjected the plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of his person, including the excessive use of force; and (b) freedom from deprivation of liberty without due process of law.

77.     The officer-defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CAUSE OF ACTION
SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS
UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
(Against defendants City, NYPD and SGT. D'AMBROSIO)

78.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

79.     By failing to remedy the wrongs committed by his subordinates, in failing to properly train, screen, supervise, or discipline his subordinates, and by personally participating in the constitutional injuries set forth above, Sgt. D'Ambrosio in his individual and official capacities, caused damage and injury in violation of plaintiff's rights guaranteed under the United States Constitution, including its Fourth and Fourteenth Amendments, through 42 U.S.C. § 1983.

80.     As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CAUSE OF ACTION
FAILURE TO INTERVENE - FOURTH AMENDMENT - 42 U.S.C. § 1983
(Against Officer-Defendants)

81.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

82.     Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other law enforcement agency employing unjustified and excessive force against a civilian.

83.     Officer-defendants' use of force against plaintiff was obviously excessive and unjustified under the circumstances yet the individual defendants failed to take any action or

make any effort to intervene, halt or protect the plaintiff from being subjected to excessive force by other individual defendants.

84.     The officer-defendants' violations of plaintiff's constitutional rights by failing to intervene in other defendants' clearly unconstitutional use of force against plaintiff resulted in the injuries and damages set forth above.

### FOURTH CAUSE OF ACTION
*MONELL* CLAIM -42 U.S.C. § 1983
(Against Defendants City, NYPD)

85.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

86.     At all times material to this complaint, The City and NYPD had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein, to wit, use of unreasonable force.

87.     All of the acts and omissions by the defendants described above were carried out pursuant to overlapping policies and practices of defendant City which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant City and its agency, the NYPD.

88.     Defendants City and NYPD by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the officer defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

89.     The acts complained of were carried out by the aforementioned officer-defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

90.    The aforementioned customs, practices, procedures and rules of the City and the

NYPD include, but are not limited to, the following unconstitutional practices:

    a.   Using excessive force on individuals;

    b.   Failing to supervise, train, screen, instruct and discipline police officers and encouraging their misconduct, including but not limited to the defendant officers named herein;

    c.   Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

    d.   Retaliating against officers who report police misconduct; and

    e.   Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

91.    The existence of aforesaid unconstitutional customs and policies may be inferred

from repeated occurrences of similar wrongful conduct, as documented in the following civil

rights actions filed against the City and analogous prosecutions of police officers:

    a.   <u>Noel Coward v. New York City Police Department, et al.</u>, Kings Sup. Index No.: 6723/12. The same defendant P.O. Smith was an officer involved in alleged false arrest, unlawful imprisonment, abuse of authority and police misconduct of a plaintiff in an incident occurring at and about the same location as the location of the incident detailed in the matter at bar. His conduct was tolerated by the City and no disciplinary action was taken or retraining conducted, despite the fact that the City settled the case with plaintiff.

    b.   <u>Carmody v. City of New York</u>, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

    c.   <u>Powers v. City of New York</u>, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

    d.   <u>Nonnemann v. City of New York</u>, 02-CV-10131 (JSR) (AJP), 2004 U.S. Dist. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion

and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth);

e.  <u>Barry v. New York City Police Department</u>, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

f.  <u>Walton v. Safir</u>, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

g.  <u>White-Ruiz v. City of New York</u>, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption"); and,

h.  <u>Ariza v. City of New York</u>, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*1 4 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department).

92.     Furthermore, the existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct,** are further evidenced, *inter alia,* by the following:

a.  In the matter of <u>Raymond Dyer v. New York City Police Department, et ano.</u>, Bronx Supreme Index No.: 301394/13, at an Examination Before Trial on May 23, 2014, defendant police officer Waqar Ali, Shield Number 20144 testified in sum and substance that the extent of education and training pertaining to the laws that police officers are charged to enforce consists of a one (1) day class, which focuses primarily on how to use the penal code index to look up the penal law to justify an arrest that has already been effectuated. *Ali deposition transcript at P. 10.* Ninety-five (95%) of the testing by the Police Academy is multiple choice and limited to the New York City Police Department Patrol Guide, not penal law. <u>Id</u> at p. 11. Although field testing is performed, none of it is utilized to test a cadet's knowledge of the law. <u>Id</u> at p. 12.

Zero follow up training is provided with regard to continuing education of penal law. Id at p. 13. Officers learn the law "on the job" and have available to them at the stationhouse a copy of the penal code to reference "if any situation arises". Id at p. 13.

b. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[1]

c. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

d. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread ... custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, Police Commissioner acknowledged, "When it happens, it's not for personal gain. It's more for convenience.[2]

e. Regarding defendant City's tacit condonement and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a City agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and

---

1 Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/ 4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

2 Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops,* New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

misconduct.3  When it does, however, Police Commissioner controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during former Police Commissioner Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.4  As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.5

93.     The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct,** are further evidenced, *inter alia,* by the following:

a.   Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

b.   In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

c.   Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

---

3 In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%).  In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%).  *See,*  CCRB  Jan.-Dec.  2007  Status  Report  at  p.  19,  *available  at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007 _A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted *defacto* policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

4 Christine Hauser, *Few Results for Reports of Police Misconduct,* New York Times, October 5, 2009, at A 19.

5 Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police,* August 20, 2008.

94.     The existence of the described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the City, including, without limitation, Police Commissioner.

95.     The actions of the officer-defendants resulted from and were taken pursuant to the above- mentioned *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Police Commissioner who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia,* in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

96.     The policies, practices, customs, and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of plaintiff s constitutional rights as

guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

97.     The City and NYPD knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

98.     The City and NYPD are directly liable and responsible for the acts of the officer-defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them, and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

99.     Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City, including Police Commissioner, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

100.     The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein.     Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff. Pursuant to the aforementioned City policies, practices

and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

101.    Plaintiff s injuries were a direct and proximate result of the defendant City and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant City, NYPD and Sgt. D'Ambrosio and the NYPD to properly supervise, train and discipline their police officers.

102.    The actions of the individual police defendants resulted from and were taken pursuant to *de facto* policies and/or well-settled and widespread customs and practices of The City, which implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force.

103.    Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff s constitutional rights.

104.    Plaintiff's injuries were a direct and proximate result of defendants The City's and the NYPD's well-settled and widespread custom and practice at issue in this litigation.

105.    As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional distress, humiliation, costs and expenses, and was otherwise damaged and injured.

## FIFTH CAUSE OF ACTION
### DELAY AND DENIAL OF MEDICAL TREATMENT AND FAILURE TO PROTECT WHILE IN CUSTODY VIOLATION OF CIVIL RIGHTS AFFORDED BY 42 U.S.C. §1983, §1985 AND §1988

106.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

107. By their conduct and under color of law, defendants deprived Mr. Crevelle of his constitutional rights to immediate medical treatment and failed to protect him once he became a prisoner, thus perpetuating and exacerbating his physical and mental pain and suffering.

108. As a result of the foregoing, plaintiff suffered injuries including but not limited to severe and permanent personal physical injuries, loss of freedom, loss of enjoyment of life, had his civil rights violated, severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff demands judgment against the defendants jointly and severally and prays for relief as follows:

a. That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b. That he be awarded punitive damages against the individual defendants; and

c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated: Brooklyn, New York
April 24, 2015

By: _____
ROBERT J. DI GIANNI JR., ESQ.
Attorney for Plaintiff
159 20th Street, Suite 1B-20
Brooklyn, New York 11232
(718) 245-6980

UNITED STATES DISTRICT COURT
EASTER DISTRICT OF NEW YORK

MARCUS CREVELLE,

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT,
P.O. RONALD SANCHEZ (Shield No.: 22769) and P.O. JUSTIN SMITH
(Shield No.: 6812) and SGT. VINCENT D'AMBROSIO (Shield No.: 1329),

Defendants.

## AMENDED COMPLAINT

ROBERT J. DI GIANNI JR., ESQ.
ATTORNEY FOR PLAINTIFF
159 20TH STREET, SUITE 1B-20
BROOKLYN, NEW YORK 11232
TELEPHONE: 718-245-6980
rjd@digiannilaw.com